UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| JONATHAN HOLBROOK,<br>1425 17th Street NW<br>Apartment 102<br>Washington, DC 20036<br>(202) 596-5620,<br>    Plaintiff, | Case No.: 1:19CV381 (CMH/MSN) |
| v. | |
| NAVIENT SOLUTIONS, LLC,<br>2001 Edmund Halley Drive<br>Reston, VA 20191,<br>    Defendant. | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, JONATHAN HOLBROOK ("**Mr. Holbrook**"), pro se, sues Defendant, NAVIENT SOLUTIONS, LLC ("**Defendant**"), and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. (the "**TCPA**").

### INTRODUCTION

1. "Voluminous consumer complaints about abuses of telephone technology ... prompted Congress to pass the TCPA." Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 370 (2012).

2. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give

1

telephone subscribers another option: telling the autodialers to simply stop calling." Osorio v. State Farm Bank, F.S.B., 746 F. 3d 1242, 1255–56 (11th Cir. 2014).

3. Mr. Holbrook was subjected to a campaign of at least 76 robocalls placed by Defendant, despite Mr. Holbrook's having repeatedly asked Defendant to stop its barrage.

4. Mr. Holbrook now sues for actual, statutory, and treble damages under 47 U.S.C. § 227 of at least $114,000.

## PARTIES

5. Mr. Holbrook is a Washington, D.C. resident.

6. Mr. Holbrook is a "person" as defined by 47 U.S.C. § 153(39).

7. Defendant is a Delaware limited liability company with its principal place of business in Reston, Fairfax County, Virginia.

8. Defendant is a loan management and servicing company.

9. Defendant is and at all relevant times was a "person" as defined by 47 U.S.C. § 153(39).

10. At all times mentioned herein when Defendant communicated with Mr. Holbrook via telephone, email or Facebook Messenger, such communication was made directly by Defendant or by Defendant's agent, representative or employee. See generally In re Joint Petition Filed by Dish Network, LLC, 28 FCC Rcd. 6574 (2013) (FCC Declaratory Ruling holding that a principal may be held vicariously liable under federal common law principles of agency for TCPA violations committed by a third party).

## JURISDICTION AND VENUE

11. As a civil action arising under the laws of the United States, jurisdiction in this case is proper under 28 U.S.C. § 1331. See Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 377 (2012) ("Because federal law creates the right of action and provides the rules of decision, [plaintiff's] TCPA claim, in 28 U.S.C. §1331's words, plainly 'aris[es] under' the 'laws . . . of the United States.'").

12. As the amount in controversy exceeds $75,000 and the parties are citizens of different States, jurisdiction is also proper under 28 U.S.C. § 1332

13. Defendant engaged in business in this District and engaged in acts or omissions within this District, and has otherwise made or established sufficient contacts within this District to permit the exercise of personal jurisdiction.

14. Venue is appropriate in this District under 28 U.S.C. § 1391(b).

15. Venue is appropriate in this Division under Local Civil Rule 3(C) because Defendant is subject to personal jurisdiction in Fairfax County, within the Alexandria Division.

## RELEVANT LAW

16. Under the TCPA, if either the caller or recipient is within the United States, it is unlawful to make any call to a cellular telephone service using an "automatic telephone dialing system or an artificial or prerecorded voice," unless the call was made "for emergency purposes," or "with the prior express consent of the called party." 47 U.S.C. § 227(b)(1).

17. An "automatic telephone dialing system" (an "**ATDS**") is defined by statute as "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1).

3

18. Courts are divided as to whether an additional exception from liability currently applies for calls made "solely to collect a debt owed to or guaranteed by the United States." See, e.g., Bratcher v. Navient Sols., LLC, No. 3:16-cv-00519-HES-JBT, 2017 U.S. Dist. LEXIS 221775, at *8 (M.D. Fla. Aug. 9, 2017) ("Contrary to Navient's argument, the amendments . . . were intended to take effect only after implementation by FCC regulations."); Cooper v. Navient Sols., LLC, No. 8:16-CV-3396-T-30MAP, 2017 U.S. Dist. LEXIS 60768, at *3 (M.D. Fla. Apr. 21, 2017) (same). But see, e.g., Whalen v. Navient Sols., LLC, No. 4:17-cv-00056-TWP-DML, 2018 U.S. Dist. LEXIS 38593, at *11 (S.D. Ind. Mar. 9, 2018) ("The Court is persuaded by Navient's arguments . . . . The amendment became effective . . . when Congress enacted the Budget Act."). See generally Bipartisan Budget Act of 2015, Pub. L. 114-74, § 301, 129 Stat. 584 (Nov. 2, 2015).

19. "The TCPA is a strict liability statute and so it does not require any intent for liability." Krakauer v. Dish Network, LLC, 1:14-CV-333, 2017 US Dist. Lexis 77163, at *3 (M.D.N.C. May 22, 2017) (citing Alea London Ltd. v. Am. Home Servs., Inc., 638 F.3d 768, 776 (11th Cir. 2011)).

20. "[E]ach call made in contravention of the TCPA constitutes an independent violation entitling the plaintiff to statutory damages." See, e.g., Dores v. One Main Fin., 1:15-cv-01609-LO-MSN, 2016 US Dist. Lexis 81913, at *3 (E.D. Va. June 01, 2016) (citing Charvat v. GVN Michigan, Inc., 561 F.3d 623, 631 (6th Cir. 2009)).

21. "The statute of limitations for federal TCPA claims is four years." Pasco v. Protus IP Sols., Inc., 826 F. Supp. 2d 825, 842 (D. Md. 2011); 28 U.S.C. § 1658(a).

## FACTUAL ALLEGATIONS

### I. Mr. Holbrook was hounded by dozens of Defendant's robocalls for over six weeks.

22. From January 23, 2019 to March 8, 2019, Mr. Holbrook received at least 76 calls (each a "robocall") from the telephone number 888-272-5543 (**"Defendant's Number"**) to his cellular telephone number, 301-xxx-4872 (**"Mr. Holbrook's Number"**).[1]

23. Mr. Holbrook currently has a record of 76 such calls, and intends to establish through discovery the number of additional such calls, if any.

24. Mr. Holbrook was disturbed by Defendant's calls at times ranging from 8:07AM to 8:49PM, at work and at home, during the workweek and on weekends. The calls interrupted his work, his sleep and his time with family and friends. Through this period, Mr. Holbrook often received three or four calls per day.

25. Mr. Holbrook repeatedly told Defendant by several means that he did not consent to such calls and instructed Defendant to stop calling him.

### II. Defendant called Mr. Holbrook with an ATDS and/or an artificial or prerecorded voice.

26. Defendant's website lists Defendant's Number on Defendant's "Contact Us" webpage, inviting the public to "Call us toll-free at 888-272-5543."

27. At all relevant times, Mr. Holbrook used a cellular telephone service and was assigned the cellular telephone number 301-xxx-4872, of which he was the sole user.

---

[1] Mr. Holbrook has redacted three digits of his telephone number here due to privacy concerns, but has previously disclosed the complete number to Defendant and will do so again upon request.

28. In addition to receiving at least 76 robocalls placed by Defendant from Defendant's Number, from January 30, 2019 to February 26, 2019, Mr. Holbrook received 16 voicemail messages from Defendant calling from Defendant's Number.

29. Each voicemail message received by Mr. Holbrook begins with a pause and a buzzing sound, continues to a voice, then ends with another pause and a buzzing sound.

30. Fourteen of the voicemail messages stated the individual caller's name and/or employee number, and the caller's affiliation with Defendant.

31. Two of the voicemail messages did not state the individual caller's name or employee number, but did mention their affiliation with Defendant.

32. Each voicemail message identified a certain woman by name (the same woman was named in all such messages), and provided a return contact number, 877-493-7438.

33. This certain woman's initials are F.W. (this person hereafter referred to as "F.W.").[2]

34. Mr. Holbrook did not know F.W., had never heard of F.W., and repeatedly so informed Defendant.

35. The voicemails described the calls as "in regards to an important business matter," "to offer assistance," and "on regards [sic] to a personal business matter."

36. Mr. Holbrook recognized that Defendant was calling him using an artificial or prerecorded voice because of the unnatural pause and buzzing sounds on the voicemail messages he received.

---

[2] Mr. Holbrook has redacted the name of the other person here due to privacy concerns, but has previously disclosed the complete name to Defendant and will do so again upon request.

37. Accordingly, upon information and belief, all of the robocalls made to Mr. Holbrook's Number from Defendant's Number were made using an artificial or prerecorded voice.

38. Mr. Holbrook recognized that Defendant was calling him using an ATDS because of the vast number of calls received, the timing of the calls, the reaction of Defendant to his requests to stop the calls, the pause on the line after he answered such a call, and the nature of the voicemail messages.

39. Accordingly, upon information and belief, all of the robocalls made to Mr. Holbrook's Number from Defendant's Number were made using equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers.

### III. Mr. Holbrook repeatedly tried to stop Defendant's relentless calls.

40. On February 1, 2019, after receiving 13 robocalls and 3 voicemail messages from Defendant, Mr. Holbrook called Defendant at the contact number left in the voicemail messages, 877-493-7438, stated that he was not the person named in the voicemail messages and that he did not know her or anything about her, and requested that Defendant stop calling his cellular telephone number. Defendant stated that there would be no further calls.

41. On February 14, 2019, after receiving a further 17 such robocalls and 6 such voicemail messages, Mr. Holbrook again called Defendant at the contact number left in the voicemail messages, and repeated his previous statements and request that Defendant's calls cease. Defendant again stated that there would be no further calls.

42. On February 20, 2019, after receiving a further 15 such robocalls and 2 such voicemail messages, Mr. Holbrook again called Defendant at the contact number left in the

voicemail messages, again repeated his previous statements and request that Defendant's calls cease. Defendant again stated that there would be no further calls. Mr. Holbrook asked that the answerer inform her supervisor of the situation and escalate the request.

43. On February 26, 2019, after receiving a further 8 such robocalls and 5 such voicemail messages, Mr. Holbrook contacted Defendant via Facebook Messenger to reiterate that he was not F.W. and did not know her, and asked that Defendant's calls cease. Defendant responded directing Mr. Holbrook to email Defendant via a dedicated social media response email address.

44. On February 27, 2019, after receiving another robocall, Mr. Holbrook emailed Defendant at the requested social media response email address reiterating his statements and request that Defendant's calls cease.

45. Later on February 27, 2019, after Mr. Holbrook received yet another robocall, Defendant called Mr. Holbrook from telephone number 888-545-4199 to discuss Mr. Holbrook's February 27th email. Mr. Holbrook explained the situation, and Defendant stated that Mr. Holbrook's Number would be added to Defendant's do-not-call list.

46. On February 28, 2019, after receiving a further 3 robocalls from Defendant, Mr. Holbrook answered a robocall from Defendant. After a pause, Mr. Holbrook was connected with Defendant, and reiterated his statements and request.

47. On March 5, 2019, after receiving a further 4 robocalls from Defendant, Mr. Holbrook again emailed Defendant's social media response email address stating that he received a further 9 robocalls from Defendant since sending his initial email to Defendant and that the problem had not been fixed.

48. On March 7, 2019, after receiving a further 6 robocalls from Defendant, the representative of Defendant who had called Mr. Holbrook from telephone number 888-545-4199 to discuss Mr. Holbrook's February 27th email responded to Mr. Holbrook's March 5th email to state that Mr. Holbrook's Number had been added to Defendant's do-not-call list.

49. Later on March 7, 2019, after receiving a further 3 robocalls from Defendant, Mr. Holbrook responded to Defendant's March 7th email stating that Mr. Holbrook received four calls on March 7, four calls on March 6 and three calls on March 5, and asking when the do-not-call list could be expected to take effect.

50. Following Mr. Holbrook's March 7th email, Mr. Holbrook received a further 4 robocalls from Defendant.

## IV. Mr. Holbrook suffered harms from Defendant's robocalls.

51. For each robocall, Mr. Holbrook suffered the injury of invasion of privacy and intrusion upon his right of seclusion.

52. For each robocall, Mr. Holbrook suffered the injury of occupation of his cellular telephone line and cellular telephone by unwelcome calls, making the cellular telephone unavailable for legitimate callers.

53. For each robocall, Mr. Holbrook suffered the injury of unnecessary expenditure of his time. Even for unanswered calls, Mr. Holbrook had to waste time unlocking the cellular telephone to deal with missed call notifications and call logs reflecting the unwanted calls. This also impaired the usefulness of these features of Mr. Holbrook's cellular telephone, which are designed to inform the user of important missed communications.

54. For each robocall, Mr. Holbrook suffered the injury of trespass to Mr. Holbrook's chattel, namely his cellular telephone and his cellular telephone service.

55. For each robocall, Mr. Holbrook suffered the injury of unnecessary expenditure of Mr. Holbrook's cellular telephone's battery power.

56. For each robocall, Mr. Holbrook suffered the injury of unnecessary usage of storage capacity of Mr. Holbrook's cellular telephone's memory.

57. Each robocall made Mr. Holbrook angry and distracted him from his daily activities.

58. For example, two robocalls placed on February 18th intruded upon an otherwise enjoyable afternoon Mr. Holbrook spent playing board games with friends. The calls interrupted the group and angered Mr. Holbrook, who complained about Defendant's unending robocalls to the irritation of all.

59. For each voicemail received pursuant to a robocall, Mr. Holbrook suffered the injury of use of the limited storage capacity of Mr. Holbrook's cellular telephone's voicemail system. Together with previously received voicemail messages, the 16 voicemail messages from Defendant filled Mr. Holbrook's voicemail storage, preventing Mr. Holbrook from receiving any further voicemail messages for a time.

60. As a cumulative result of Defendant's campaign of unlawful calls to Mr. Holbrook's Number, Mr. Holbrook suffered the injuries of annoyance, anxiety, and emotional distress.

61. Mr. Holbrook has been upset by the knowledge that Defendant is engaging in an ongoing campaign of placing calls, completed or otherwise, without regard for the law or their recipients' well-being and privacy rights, including his own.

## V. Defendant never had prior express consent to call Mr. Holbrook's Number.

62. The "called party" whose consent is required is the actual recipient of the call (i.e. Mr. Holbrook), and not the intended recipient (i.e. F.W.). Soppet v. Enhanced Recovery Co., 679 F.3d 637, 640–41 (7th Cir. 2012) ("Suppose Smith, trying to reach Jones, dials the number with a typo and reaches Perkins, who says 'you have the wrong number.' No colloquial user of English would call Jones rather than Perkins the 'called party.'"); Moore v. Dish Network, LLC, 57 F. Supp. 3d 639, 649–50 (N.D. W.Va. 2014).

63. Even if F.W. were construed as the called party, she never was the subscriber or customary user of Mr. Holbrook's Number, and so could never have given valid consent to Defendant to call it.

64. Defendant serviced certain student loans of Mr. Holbrook until January 13, 2017.

65. Pursuant to that relationship, Mr. Holbrook had provided Defendant with his cellular telephone number.

66. Pursuant to that relationship, Mr. Holbrook had explicitly denied Defendant his consent for autodialing, transmitting prerecorded messages and text messaging to his cellular telephone number.

67. Although it no longer services any of Mr. Holbrook's loans, Defendant continues to maintain an account for Mr. Holbrook with information including his name and contact information.

68. Mr. Holbrook's account with Defendant continues to reflect that his cellular telephone number is associated with his name.

69. Mr. Holbrook's account with Defendant continues to reflect that Mr. Holbrook denied Defendant his consent to autodialing, prerecorded messages and text messaging to his

cellular telephone number, reading "Cell phone consent = None." This indicates that Mr. Holbrook did **not** agree to Defendant's proposed consent language, which reads "I authorize Navient Solutions, LLC, and its subsidiaries, affiliates and vendors, to contact me at such number using any means of communication, including, but not limited to, calls placed to my cellular phone using an automated dialing device, calls using prerecorded messages and/or SMS text messages, regarding any current or future loans owned or serviced Navient Solutions, LLC, or its subsidiaries, affiliates and vendors, even if I will be charged by my service provider(s) for receiving such communications."

70. Defendant thus knew or should have known that Mr. Holbrook's Number did not belong to F.W. from before its first call to him.

71. Defendant also knew or should have known that F.W. could not give consent to call Mr. Holbrook's Number.

72. Defendant also knew or should have known that it lacked Mr. Holbrook's express prior consent to call his Number.

73. Moreover, Mr. Holbrook's Number's voicemail greeting, played for any caller whose call is not answered and who does not prematurely end the call, states and stated at all relevant times: "Hi, this is Jon. Leave a message." This message clearly indicates that the number called was not F.W.'s phone number.

74. Even setting Defendant's records on Mr. Holbrook aside, Defendant knew or should have known after its very first call to Mr. Holbrook's Number that the Number did not belong to F.W. and that it therefore lacked consent to call Mr. Holbrook's Number.

75. None of the robocalls placed to Mr. Holbrook's Number were made with the "prior express consent" of Mr. Holbrook as specified in 47 U.S.C. § 227(b)(1)(A).

## VI. Defendant did not call Mr. Holbrook on account of an emergency or federal debt.

76. None of the robocalls placed to Mr. Holbrook's Number were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

77. None of the robocalls placed to Mr. Holbrook's Number were "solely to collect a debt owed to or guaranteed by the United States" as specified in the Bipartisan Budget Act of 2015. Pub. L. 114-74, § 301, 129 Stat. 584 (Nov. 2, 2015).

## VII. Defendant willfully and/or knowingly violated the TCPA.

78. "While a finding of willfulness does not require bad faith, it does require that the caller 'have reason to know, or should have known, that his conduct would violate the statute.'" Krakauer v. Dish Network, LLC, 1:14-CV-333, 2017 US Dist. Lexis 77163, at *26 (M.D.N.C. May 22, 2017) (citing Texas v. Am. Blastfax, Inc., 164 F. Supp. 2d 892, 899–01 (W.D. Tex. 2001) and others).

79. Upon knowledge and belief, Defendant had a policy of placing robocalls to numbers that it knew or should have known were wrong numbers, evidently reasoning that it was more costly to change its procedures and equipment than to continue placing such robocalls.

80. At least from the very first call it placed to Mr. Holbrook's Number, Defendant knew or should have known that any robocalls to Mr. Holbrook's Number would be unlawful calls in contravention of the TCPA.

81. At least from the first time that Mr. Holbrook's voicemail greeting played or would have played in response to a call from Defendant had Defendant allowed its call to last long enough to trigger the voicemail greeting, Defendant knew or should have known that any further robocalls to Mr. Holbrook's Number would be unlawful calls in contravention of the TCPA.

82. At least from the first call from Mr. Holbrook to Defendant explaining that he was not the person mentioned in Defendant's voicemail messages and that he did not consent to be called, Defendant knew or should have known that any further robocalls to Mr. Holbrook's Number would be unlawful calls in contravention of the TCPA.

83. Defendant willfully and/or knowingly violated the TCPA with respect to Mr. Holbrook.

84. As a highly sophisticated and experienced party, Defendant had reason to know, or should have known that its behavior was in violation of the TCPA.

85. Defendant frequently submits comments to the FCC on nuanced points of the TCPA.

86. It is also safe to say that Defendant is <u>extremely</u> familiar with the contours of liability under the TCPA as it has evolved, having a long history defending such cases both successfully and unsuccessfully just in the past few years alone. See, e.g., <u>Hill v. Navient Sols., LLC</u>, No. 5:19-cv-00161 (C.D. Cal. Jan 28, 2019); <u>Venegas v. Navient Sols., LLC</u>, No. 8:18-cv-01224 (C.D. Cal. July 11, 2018); <u>Panzarella v. Navient Sols., Inc.</u>, No. 3:18-cv-00058 (S.D. Iowa June 01, 2018); <u>Adkins v. Navient Corp.</u>, No. 1:18-cv-01680 (N.D. Ill. Mar 07, 2018); <u>Lamey v. Navient Sols., LLC</u>; No. 3:17-cv-00945 (S.D. Miss. Nov. 28, 2017); <u>Davis v. Navient Corp.</u>, No. 1:17-cv-00992 (W.D.N.Y. Oct 03, 2017); <u>Lamb v. Asset Recovery Sols., Inc., Navient Sols., LLC</u>, No. 1:17-cv-04336 (N.D. Ill. June 08, 2017); <u>Severns v. Navient Sols., LLC</u>, No. 1:17-cv-03590 (N.D. Ill. May 11, 2017); <u>Robertson v. Navient Sols., LLC</u>, No. 8:17-cv-01077 (M.D. Fla. May 08, 2017); <u>Demyanenko-Todd v. Navient Corp.</u>, No. 3:17-cv-00772 (M.D. Pa. May 01, 2017); <u>Ponce v. Navient Sols., Inc.</u>, No. 2:17-cv-00551 (C.D. Cal. Jan 23, 2017); <u>Garner v. Navient Sols., LLC</u>, No. 3:17-cv-00031 (W.D. Ky. Jan 18, 2017); <u>Nolasco v. Navient Sols., Inc.</u>, No. 2:16-cv-02734 (D. Nev. Nov 29, 2016); <u>Silverman v. Navient Sols., LLC</u>,

No. 3:16-cv-00113 (S.D. Iowa Nov. 28, 2016); <u>Cedeno v. Navient Sols., Inc.</u>, No. 0:16-cv-61049 (S.D. Fla. May 17, 2016); <u>Manson v. Navient Sols., Inc.</u>, No. 1:16-cv-04015 (N.D. Ill. Apr 05, 2016); <u>Nelson v. Navient Sols., Inc.</u>, No. 1:16-cv-00185 (N.D. Ga. Jan 20, 2016); <u>Cofer v. Navient Corp.</u>, No. 4:16-cv-00058 (E.D. Mo. Jan 14, 2016); <u>Parchman v. SLM Corp., Navient Corp., Navient Sols., Inc.</u>, No. 2:15-cv-02819 (W.D. Tenn. Dec. 22, 2015); <u>Maksymowski v. Navient Sols., Inc.</u>, No. 5:15-cv-14368 (E.D. Mich. Dec 16, 2015); <u>Cabrera v. Navient Sols., Inc.</u>, No. 1:15-cv-06863 (N.D. Ill. Aug 06, 2015); <u>Hernandez v. Navient Sols., Inc.</u>, No. 8:15-cv-00975 (C.D. Cal. Jun 17, 2015); <u>Johnson v. Navient Sols., Inc.</u>, No. 1:15-cv-00716 (S.D. Ind. May 04, 2015).

## COUNT I
### (Violations of the TCPA)

87. Mr. Holbrook fully incorporates and re-alleges the above paragraphs of this Complaint as though fully stated herein.

88. Defendant repeatedly placed calls to Mr. Holbrook's cellular telephone using an automatic telephone dialing system or pre-recorded or artificial voice without Mr. Holbrook's prior express consent and without any emergency purpose, and did not place the calls solely to collect a debt owed to or guaranteed by the United States.

89. Each such call made by Defendant constitutes a violation of the TCPA. <u>See</u> 47 U.S.C. § 227(b)(1)(A).

90. Defendant knew or should have known that its calls to Mr. Holbrook's Number were in violation of the TCPA. As such, each of the at least 76 calls made to Mr. Holbrook by Defendant was made in knowing and/or willful violation of the TCPA, and is subject to treble damages pursuant to 47 U.S.C. § 227(b)(3).

91. Mr. Holbrook is entitled to an award of $500 in statutory damages for each call placed in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

92. Mr. Holbrook is entitled to an award of treble damages of $1,500 per call made in knowing and/or willful violation of the TCPA, pursuant to 47 U.S.C. § 227(b)(3).

**WHEREFORE**, Mr. Holbrook prays that judgment be entered against Defendant:

A. Actual damages for each call determined to be in violation of 47 U.S.C. § 227(b);

B. All court costs, witness fees and other fees incurred;

C. Statutory damages of $500.00 for each call determined to be in violation of 47 U.S.C. § 227(b);

D. Treble damages of $1,500.00 for each violation determined to be willful and/or knowing pursuant to 47 U.S.C. § 227(b)(3); and

E. Such other and further relief as the Court may deem just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: April 2, 2019

Respectfully submitted,

Jonathan Holbrook
1425 17th Street NW
Apartment #102
Washington, DC 20036
jonathan.holbrook@gmail.com
(202) 596-5620
Pro se

## CERTIFICATION

I declare under penalty of perjury that:

(1) No attorney has prepared, or assisted in the preparation of this document.

I am an attorney in good standing in the District of Columbia and the State of Maryland, and am not admitted to practice in the Commonwealth of Virginia. I appear pro se and not as an attorney before this Court.

<u>Jonathan Holbrook</u>
Name of Pro Se Party

_____
Signature of Pro Se Party

Executed on: APRIL 2 2019 (Date)